Stephen H.M. Bloch # 7813
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, UT  84111
Telephone:  (801) 486-3161

Sharon Buccino DC # 432073 (*pro hac vice filed concurrently*)
NATURAL RESOURCES DEFENSE COUNCIL
1200 New York Ave. NW Suite 400
Washington, D.C. 20005
Telephone: (202) 289-6868



FILED
U.S DISTRICT COURT

2006 APR 25  A 8: 44

DISTRICT OF UTAH

BY:_____
    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

|  |  |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE, NATURAL RESOURCES DEFENSE COUNCIL, and THE WILDERNESS SOCIETY, <br><br>      Plaintiffs, <br><br> vs. <br><br> THE UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF LAND MANAGEMENT, and LYNN SCARLETT, in her official capacity as acting Secretary of the Department of the Interior, <br><br>      Defendants. | Judge Dale A. Kimball <br> **DECK TYPE:** Civil <br> **DATE STAMP:** 04/25/2006 @ 08:45:54 <br> **CASE NUMBER:** 2:06CV00342  DAK |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.   This suit challenges the decision by the Department of the Interior and the Bureau of Land Management (collectively referred to as "BLM") authorizing the sale of 28 oil and gas leases that allow surface occupancy on approximately 35,000 acres of BLM managed lands in Utah at the September 8, 2004 lease sale.  A BLM press release issued immediately after the sale identified the sale as the largest in terms of acreage offered and revenue collected in Utah BLM history.

2.   The issuance of oil and gas leases that allow surface occupancy – *i.e.* leases that lack no

surface occupancy stipulations ("NSO stipulations") – constitutes the point at which the BLM

engages in an irreversible and irretrievable commitment of resources.  That is, once such leases

have been issued, the BLM can no longer entirely preclude surface disturbance on the leasehold –

even if necessary to protect publicly-owned resources.  In its hurry to lease public lands, the BLM

has ignored important environmental and cultural laws requiring it to "look before it leaps," and to

fully evaluate, analyze, and disclose the impacts of oil and gas leasing, development, and related

activities before leases are offered, sold, and issued.  In Utah, the BLM has refused to follow this

legally required precautionary approach and issued 28 federal oil and gas leases at its September

2004 oil and gas lease sale without adequate environmental analysis, without adequate cultural

review and consultation, and without appropriate protective lease stipulations.

3.   The leases in question cover some of the wildest and most spectacularly beautiful public

lands in the United States; lands that are internationally renowned as being among America's

unique treasures. The BLM itself between 1996-99 compiled new information and concluded that

many of the lands at issue in this case contain wilderness characteristics – that is, that they are in

natural condition with little or no evidence of the presence of man and offer outstanding

opportunities for solitude and for primitive and unconfined recreation.   The BLM has never

considered the effects of oil and gas development on the wilderness values of these lands.  It is

this and other new information that BLM must consider – but has not done so – before leasing

these lands.

### JURISDICTION AND VENUE

4.   This court has jurisdiction over this action pursuant to the National Environmental Policy

Act (NEPA), 42 U.S.C. §§ 4321 *et seq.* and its implementing regulations, the National Historic

Preservation Act (NHPA), 16 U.S.C. §§ 470 *et seq.* and its implementing regulations, the

Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act (APA), 5 U.S.C.

§§551 *et seq.*, and 28 U.S.C. § 1331 (federal question).

5.   Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

6.   Venue is proper in the Central Division of the United States District Court for the District

of Utah pursuant to 28 U.S.C. § 1391(e) because the statutory violations alleged herein all

occurred within the State of Utah.

## PARTIES

7.   Plaintiff SOUTHERN UTAH WILDERNESS ALLIANCE (SUWA) is a non-profit

environmental membership organization dedicated to the sensible management of public lands

within the State of Utah, to the preservation and protection of plant and animal species, and to the

preservation of Utah's remaining wild lands.   SUWA has offices in Utah and in Washington, D.C.

SUWA has members in all fifty states and several foreign countries.  SUWA members use and

enjoy public lands in and throughout Utah for a variety of purposes, including scientific study,

recreation, hunting, aesthetic appreciation, and financial livelihood.  SUWA members frequently

visit and recreate (*e.g.*, hunt, camp, bird, sightsee, and enjoy solitude) throughout the lands

comprising the oil and gas lease parcels that are the subject of this complaint, including

Desolation Canyon, Coal Canyon, Floy Canyon, Bull Canyon, the White River, Snake Valley,

Wild Horse Pass, Lion Peak, Rockwell, and Dragon Canyon.  SUWA members have a substantial

interest in this matter – they have suffered real and immediate harm by the BLM's decision to

offer, sell, and issue leases within these areas, as alleged below.  Because oil and gas leasing is the

point at which an irreversible and irretrievable commitment of resources is made, the BLM's

failure to comply with applicable federal laws and regulations prior to issuing the challenged

leases will cause some level of surface disturbance without an adequate environmental analysis or

adequate lease stipulations.  This inevitable surface disturbance harms the interest of SUWA and

its members in the leased lands. SUWA members also have a substantial interest in seeing that

the BLM complies with the terms and requirements of NEPA and the NHPA. SUWA brings this

action on its own behalf and on behalf of its adversely affected members.

8.  Plaintiff NATURAL RESOURCES DEFENSE COUNCIL (NRDC) is a non-profit

environmental membership organization with more than 400,000 members throughout the United

States. NRDC members use and enjoy public lands in and throughout Utah, including the specific

lands at issue, for a variety of purposes, including: recreation, solitude, scientific study, and

aesthetic appreciation. NRDC has had a longstanding and active interest in the protection of

public lands in Utah. With its nationwide membership and a staff of lawyers, scientists, and other

environmental specialists, NRDC plays a leading role in a diverse range of land and wildlife

management and resource development issues. Over the years, NRDC has participated in a

number of court cases involving resource development issues, including NEPA and NHPA

compliance, throughout the American West and including Utah. NRDC brings this action on its

own behalf and on behalf of its members.

9.  Plaintiff THE WILDERNESS SOCIETY (TWS) is a non-profit national leadership

organization founded in 1935. TWS works to protect America's wilderness and to develop a

network of wild lands, through public education, scientific analysis, and advocacy. TWS' goal is

to ensure that future generations will enjoy the clean air, water, wildlife, beauty, and opportunities

for recreation and renewal that pristine deserts, mountains, forests and rivers provide. TWS views

protecting wilderness quality and other sensitive Utah BLM managed lands as vital to achieving

its mission. TWS has worked for years to protect BLM wilderness quality and other sensitive

lands in Utah. Wilderness Society members use the public lands at issue in this case, including

Desolation Canyon, the south slope of the Book Cliffs, Bull Canyon, the White River, Snake

Valley/Wild Horse Pass, Rockwell, Lion Peak, and Dragon Canyon for a variety of purposes,

including recreation and aesthetic appreciation, and are directly harmed by BLM's decision to issue the 28 leases at issue here without adequate NEPA and NHPA analysis and NHPA consultation and thus without adequate protective stipulations. TWS brings this action on its own behalf and on behalf of its members.

10. Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is the federal agency responsible for managing just under 500 million acres of federal public lands for a variety of competing resources, including oil and gas development, as well as for the protection of the natural and human environment. The Department of the Interior is required to comply with NEPA and the NHPA and to evaluate, analyze, and disclose the impacts of federal undertakings to the public.

11. Defendant BUREAU OF LAND MANAGEMENT (BLM) is the agency within the U.S. Department of the Interior directly responsible for carrying out the Department's obligations under statutes and regulations governing oil and gas exploration, leasing, and development, and for complying with NEPA and the NHPA. The BLM manages approximately 23 million acres in Utah.

12.    Defendant LYNN SCARLETT is sued in her official capacity as acting Secretary of the Department of the Interior. In that capacity she is responsible for ensuring that the Department and the agencies within the Department, including the Bureau of Land Management, comply with all applicable laws and regulations, including NEPA and the NHPA.

## FACTS GIVING RISE TO PLAINTIFFS' CAUSES OF ACTION

13. In the spring of 2004, the BLM's Utah state office published a preliminary sale list for the quarterly competitive oil and gas lease sale to be held on September 8, 2004. Utah BLM field offices prepared and completed determinations of NEPA adequacy (DNAs) in the early summer of 2004, and, on July 9, 2004, the BLM notified the public that the agency intended to offer a total of

222 parcels at its September 8, 2004 oil and gas competitive lease sale. BLM issued a finding of no significant impact regarding the September 8th sale.

14. Twenty of the 219 lease parcels sold at the September 2004 lease sale are located on lands that the BLM itself determined between 1996-99 to have wilderness character, as defined by the Wilderness Act. These lands are located in Desolation Canyon (a remote stretch of the Green River), along the Book Cliffs' rugged and stunning southern slope with its thousand foot cliffs and deep canyons, Bull Canyon (south of Dinosaur National Monument), and near the White River. These twenty parcels include the following: UT 179, UT 190, UT 191, UT 192, UT 193, UT 194, UT 195, UT 196, UT 197, UT 198, UT 199, UT 201, UT 204, UT 205, UT 206, UT 207, UT 213, UT 228, UT 234, and UT 267.

15. Parcels UT 179, UT 190, UT 191, UT 192, UT 193, UT 194, UT 195, UT 196, UT 197, UT 198, UT 199, UT 201, UT 204, UT 205, UT 206, and UT 207 are located in northeastern Utah in the area designated by the BLM as the "Desolation Canyon wilderness inventory area." These sixteen parcels are located on both sides of the Green River and some straddle the River itself. The BLM's 1998 wilderness inventory evaluation of the Desolation Canyon wilderness inventory area described the area as "natural [and] scenic" containing "outstanding opportunities for solitude and primitive and unconfined recreation." The BLM's inventory further stated that the Desolation Canyon wilderness inventory area "[i]n combination with the [Desolation Canyon wilderness study area], represents one of the largest blocks of roadless BLM lands within the continental United States." The BLM's 1998 wilderness inventory concluded for the first time that the Desolation Canyon wilderness inventory area has wilderness character. This area has been proposed for wilderness protection in America's Redrock Wilderness Act (H.R. 1774/ S. 882).

16. Parcels UT 213 and UT 228 are located in two areas on the southern flank of Utah's Book Cliffs that the BLM has designated as the "Coal Canyon wilderness inventory area" and the "Floy

6

Canyon wilderness inventory area." The BLM has described the Book Cliffs as part of "the longest continuous escarpment in the world." In its 1998 wilderness inventory evaluation, the BLM determined for the first time that these two areas have wilderness character and that each area appears to be natural, offer outstanding opportunities for solitude and for primitive and unconfined recreation, and also contains numerous supplemental values that contribute towards their wilderness character. Both parcels include lands that have been proposed for wilderness protection in America's Redrock Wilderness Act.

17. Parcel UT 234 is located immediately south of the White River and within the "White River wilderness inventory area." BLM has described the White River wilderness inventory area as having "exceptional" scenic beauty along with "spectacular vistas, abundant wildlife, and unique geologic features to explore." The BLM's 1998 wilderness inventory concluded for the first time that the White River wilderness inventory area has wilderness character. This area has been proposed for wilderness protection in America's Redrock Wilderness Act.

18. Parcel UT 267 is located south of Dinosaur National Monument and within the "Bull Canyon wilderness inventory area." The BLM's 1998 wilderness inventory concluded for the first time that the Bull Canyon wilderness inventory area has wilderness character. BLM has described the Bull Canyon WIA – which is contiguous with the Bull Canyon wilderness study area – as having "outstanding opportunities for solitude and recreation. . . . Riparian vegetation in the canyons provides a diverse oasis." This area has been proposed for wilderness protection in America's Redrock Wilderness Act.

19. Parcels UT 179 and UT 192 are located adjacent to the Desolation Canyon wilderness inventory area, in an area determined by BLM to have a reasonable probability of wilderness character (referred to as an "RPD" – reasonable probability determination). The Desolation Canyon RPD area is an extension of the Desolation Canyon wilderness study area and wilderness

inventory area and exhibits many, if not all, of the same outstanding characteristics. The BLM's Vernal field office determined that the information provided to BLM by the Southern Utah Wilderness Alliance regarding the Desolation Canyon area "is significantly different from the information in prior inventories conducted by BLM regarding the wilderness values of the area or a portion of the area." The lands in the Desolation Canyon RPD have been proposed for wilderness protection in America's Redrock Wilderness Act.

20.  Eleven parcels sold at the September 2004 lease sale are located in areas proposed by conservationists for designation as areas of critical environmental concern (ACECs).  ACECs are areas designated and protected under the Federal Land Policy and Management Act "where special management is required (when such areas are developed or used or where no development is required) to protect and prevent irreparable damage to important historic, cultural, or scenic values, fish and wildlife resources, or other natural systems or processes." 43 U.S.C. §§ 1712(c)(3); 1702(a).

21. The eleven parcels are all located on lands managed by the BLM's Vernal field office and the Vernal office is considering the designation of these lands as ACECs in its ongoing land use plan revision process.  Specifically, the eleven parcels include the following: UT 179, UT 190, UT 191, UT 192, UT 194, UT 196, UT 197, UT 198, UT 199, UT 201, and UT 234.  The lands in these proposed ACECs have been proposed for wilderness protection in America's Redrock Wilderness Act and the values identified for protection in the proposed ACECs include wilderness characteristics, as well as cultural resources, scenic values, riparian ecosystems, wetlands, fish species, and wildlife habitat.

22.  Parcel UT 234 is located in the proposed White River ACEC, which is being considered by the BLM's Vernal field office in the draft Vernal RMP for designation as an ACEC.

23. Parcels UT 190, UT 191, UT 194, UT 197, UT 198, and UT 199 are located in the proposed Green River Corridor ACEC, which is being considered by the BLM's Vernal field office in the draft Vernal RMP for designation as an ACEC.

24. Parcels UT 179, UT 193, UT 194, UT 196, UT 197, and UT 201 are located in the proposed Nine Mile Canyon ACEC, which is being considered by the BLM's Vernal field office in the draft Vernal RMP for designation as an ACEC.

25. Neither the DNAs prepared by BLM for the September 8, 2004 oil and gas lease sale, nor the environmental analyses they allege to tier to, provide a site-specific analysis of the impacts of oil and gas leasing and development. The site-specific impacts of oil and gas development can be significant, particularly in roadless areas and/or areas substantially unaffected by human activity. Construction and operation of wells, towers, pumps, pipelines, roads, and waste pits can destroy wilderness qualities and scenic values, degrade air quality as well as habitat for plants and animals, and negatively affect the quantity and quality of water resources. Cultural and historic properties can be destroyed.

26. In addition, neither the BLM land use plans that address the lands to be leased – the 1985 Grand Resource Management Plan (RMP), the 1984 Book Cliffs RMP, the 1991 Diamond Mountain RMP – nor their accompanying environmental impact statements and subsequent oil and gas cumulative impacts environmental assessments analyze the site specific impacts of oil and gas leasing and development, or the impacts of related activities. In particular, these documents contain no analysis of any impacts of oil and gas leasing and development and related activities on the wilderness characteristics of the lands the agency decided to lease on September 8, 2004 because, at the time the documents were prepared, the BLM did not know that the lands possessed wilderness characteristics.

27. On August 23, 2004 Southern Utah Wilderness Alliance, NRDC, and TWS (collectively "SUWA") protested the inclusion of 46 parcels in the September 8, 2004 lease sale without no surface occupancy stipulations

28. Of these 46 protested parcels, the following 28 parcels were sold competitively on September 8: UT 051, UT 073, UT 074, UT 077, UT 120, UT 121, UT 122, UT 179, UT 190, UT 191, UT 192, UT 193, UT 194, UT 195, UT 196, UT 197, UT 198, UT 199, UT 201, UT 204, UT 205, UT 206, UT 207, UT 213, UT 228, UT 234, UT 267, and UT 268.

29. All of the 28 protested and sold lease parcels include lands proposed for wilderness designation in America's Redrock Wilderness Act.

30. The BLM also received protests from the National Outdoor Leadership School (NOLS) and the Outdoor Industry Association (OIA), asking the BLM to defer leasing many of these same 28 parcels. Both the NOLS and OIA protests stressed that the acknowledged wild and roadless character of these parcels was directly at risk from BLM's decision to sell these leases without first fully considering and analyzing the impacts of leasing on their wilderness qualities.

31. Oil and gas development and associated activities in parcels UT 179, UT 190, UT 191, UT 192, UT 193, UT 194, UT 195, UT 196, UT 197, UT 198, UT 199, UT 201, UT 204, UT 205, UT 206, UT 207, UT 213, UT 228, UT 234, and UT 267 will significantly affect the wilderness and other resources of the leased parcels. These activities include the construction and maintenance of access roads, wells, drill pads, pipelines, noisy compressor stations that run 24 hours a-day, and waste pits. There will be constant traffic on the roads to maintain these facilities, as well as noise and destruction of the existing naturalness of these lands.

32. SUWA alleged in its Protest of the September 8 lease sale that the BLM's decision to lease the 28 parcels violated NEPA, the NHPA, and other federal laws and their implementing regulations.

33. None of the 28 parcels that SUWA protested, and that BLM sold competitively, were issued with unconditional NSO stipulations that covered all the leased surface lands.

34. BLM denied SUWA's protest in its entirety on September 30, 2005.

35. BLM completed the leasing transaction and issued the 28 leases at issue in this case on or about October 1, 2005.

36. BLM has received application for permit to drill (APDs) for some of the 28 leases that are at issue in this case.

## FIRST CAUSE OF ACTION
### Violation of NEPA and its Implementing Regulation
*Failure to Prepare Supplemental NEPA Analysis*

37. Plaintiffs incorporate herein by reference paragraphs 1-36 above.

38. NEPA requires BLM to "prepare supplements to either draft or final environmental impact statements if . . . there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9.

39. This "duty to supplement" applies equally to draft or final environmental impact statements and environmental assessments.

40. As set forth above, the BLM has significant new information both from its own wilderness inventory conducted between 1996-99 and from SUWA regarding the wilderness character and other special values of the lands affected by 20 of the challenged lease parcels. This information is not reflected in any existing BLM land use plan or NEPA analyses, all of which pre-date the BLM's 1996-99 wilderness inventory and SUWA's 2002 submission of wilderness information.

41. After reviewing this new information, BLM improperly concluded that it was not "significant new information" and thus did not require preparation of a supplemental NEPA

11

document before the agency approved the sale of 20 of the subject oil and gas leases without NSO

stipulations.

42. As set forth above, BLM has significant new information concerning special values and

resources found within several proposed areas of critical environmental concern and the agency is

considering whether or not to designate these areas as ACECs in its land use planning process.

43. After reviewing whether leasing was appropriate within the White River, Green River

Corridor, and Nine Mile Canyon proposed ACECS, the BLM's Vernal field office improperly

concluded that the information concerning these ACECs was not "significant new information"

and thus did not require preparation of a supplement NEPA document before the agency approved

the sale of eleven of the subject oil and gas leases without NSO stipulations.

44. Accordingly, the BLM has violated NEPA's implementing regulation, 40 C.F.R. §

1502.9, and has acted arbitrarily, capriciously, and contrary to law in violation of the APA, 5

U.S.C. § 706(2)(A).

### SECOND CAUSE OF ACTION
**Violation of NEPA and its Implementing Regulations**
*Failure to Defer Leasing While Alternatives under Consideration in Land Use Planning Process*

45. Plaintiffs incorporate herein by reference paragraphs 1-44 above.

46. NEPA provides that while BLM is in the midst of an environmental analysis, such as the

Vernal land use planning/NEPA process, the agency must not take any action "which would . . .

[l]imit the choice of reasonable alternatives." 40 C.F.R. § 1506.1(a).  *See also* 40 C.F.R. §

1502.2(f) (while preparing environmental impact statements, federal "[a]gencies shall not commit

resources prejudicing selection of alternatives before making a final decision (§ 1506.1).").

47. NEPA further provides that while BLM is preparing a required EIS "and the [proposed]

action is not covered by an existing program statement," that BLM must not take actions that "will

prejudice the ultimate decision on the program.  Interim action prejudices the ultimate decision on

the program when it tends to determine subsequent development or limit alternatives." 40 C.F.R.

§ 1506.1(c).

48. The EIS prepared as part of the Vernal land use planning process is required based on the

agency's determination the current land use plan is out of date and needs to be revised.

49. As set forth above, BLM's Vernal field office is preparing a new land use plan and

accompanying required environmental impact statement for the management of nearly 2 million

acres of BLM managed lands.

50.  By considering the lands underlying these leases for ACEC designation, BLM has made a

determination that they include relevant and important values that make them "fragile, sensitive,

rare, irreplaceable, exemplary and unique" and could be damaged unless they are protected from

activities such as oil and gas development.  BLM's internal guidance, Instruction Memorandum

IM 2004-110 (Change 1) also provides for deferral of leasing in this situation.

51. BLM improperly determined that it could proceed with the sale and issuance of the

following eleven leases in the Vernal field office while it is considering whether or not to

designate the lands underlying those leases as ACECs and afford them special management

protections and stipulations: UT 179, UT 190, UT 191, UT 192, UT 194, UT 196, UT 197, UT

198, UT 199, UT 201, and UT 234.

52.  Accordingly, the BLM has violated NEPA's implementing regulation, 40 C.F.R. §

1506.1, and has acted arbitrarily, capriciously, and contrary to law in violation of the APA, 5

U.S.C. § 706(2)(A).

### THIRD CAUSE OF ACTION
### Violation of the NHPA and its Implementing Regulations
*Failure to Consult with Utah State Historic Preservation Officer and with Members of the Public*

53.  Plaintiffs incorporate herein by reference paragraphs 1-51 above.

54. The NHPA requires that a federal agency shall "prior to the issuance of any license . . .
take into account the effect of an undertaking on any district, site, structure, or object that is
included or eligible for inclusion in the National Register [of Historic Places]." 16 U.S.C. §
470(f).

55. The NHPA's implementing regulations require that an "agency official shall determine
whether the proposed Federal action is an undertaking as defined in [36 C.F.R.] § 800.16(y), and,
if so, whether it is a type of activity that has the potential to cause effects on historic properties."
36 C.F.R. § 800.3(a).

56. BLM is required to "make reasonable efforts to identify all historic properties and sacred
sites on BLM-administered lands and private lands where a BLM undertaking will occur within
Utah." 2001 State Protocol Agreement between Utah State Office, BLM and Utah State Historic
Preservation Office, Section VI.A; 16 U.S.C. § 470(f).

57. The sale of an oil and gas lease, without NSO stipulations, constitutes an undertaking
under the NHPA that has the potential to cause effects on historic properties and thus requires
consultation with Native American tribes, the Utah State Historic Preservation Officer (Utah
SHPO), and members of the public to identify historic properties and sacred sites prior to approval
of the undertaking.

58. There is no record that BLM's Fillmore, Vernal, or Moab field offices consulted with the
public regarding the sale of any of the following 28 lease parcels at the September 8, 2004 lease
sale: UT 051, UT 073, UT 074, UT 077, UT 120, UT 121, UT 122, UT 179, UT 190, UT 191, UT
192, UT 193, UT 194, UT 195, UT 196, UT 197, UT 198, UT 199, UT 201, UT 204, UT 205, UT
206, UT 207, UT 213, UT 228, UT 234, UT 267, and UT 268.

59. BLM's failure to adequately consult with the Utah SHPO, as well as with interested
members of the public, prior to the sale and issuance of the 28 leases at issue violated the NHPA

and its implementing regulations and was arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A).

**PRAYER FOR RELIEF**

Wherefore, plaintiffs respectfully pray that this Court enter judgment in their favor and against defendants the Department of the Interior, the Bureau of Land Management, and Lynn Scarlett and that the Court:

(1)     Declare that defendants have violated the National Environmental Policy Act, the National Historic Preservation Act, and applicable implementing regulations as set forth above; and

(2)     Declare that defendants issued leases UT 051, UT 073, UT 074, UT 077, UT 120, UT 121, UT 122, UT 179, UT 190, UT 191, UT 192, UT 193, UT 194, UT 195, UT 196, UT 197, UT 198, UT 199, UT 201, UT 204, UT 205, UT 206, UT 207, UT 213, UT 228, UT 234, UT 267, and UT 268 in violation of the National Environmental Policy Act, the National Historic Preservation Act, and their applicable implementing regulations; and

(3)     Award injunctive relief directing defendants to cancel and rescind leases UT 179, UT 190, UT 191, UT 192, UT 193, UT 194, UT 195, UT 196, UT 197, UT 198, UT 199, UT 201, UT 204, UT 205, UT 206, UT 207, UT 213, UT 228, UT 234, and UT 267 and prohibiting the defendant agency BLM from re-offering these leases until the agency conducts supplemental NEPA analyses evaluating and analyzing the significant new information of wilderness characteristics in these lease parcels; and

(4)     Award injunctive relief directing defendants to cancel and rescind leases UT 179, UT 190, UT 191, UT 192, UT 194, UT 196, UT 197, UT 198, UT 199, UT 201, and UT 234 and prohibiting the defendant agency BLM from re-offering these leases until the agency has completed the Vernal resource management plan and environmental impact statement. If BLM

15

completes the Vernal RMP/EIS before the Court can afford SUWA the requested relief, the Court should award SUWA injunctive relief directing defendants to suspend leases UT 179, UT 190, UT 191, UT 192, UT 194, UT 196, UT 197, UT 198, UT 199, UT 201, and UT 234 until the agency prepares a supplemental NEPA analysis to determine whether ACEC boundaries in the Vernal RMP should be expanded to include the challenged parcels; and

(5)     Award injunctive relief directing defendants to cancel and rescind leases UT 051, UT 073, UT 074, UT 077, UT 120, UT 121, UT 122, UT 179, UT 190, UT 191, UT 192, UT 193, UT 194, UT 195, UT 196, UT 197, UT 198, UT 199, UT 201, UT 204, UT 205, UT 206, UT 207, UT 213, UT 228, UT 234, UT 267, and UT 268 and prohibiting the defendant agency BLM from re-offering these leases until the agency consults with the Utah State Historic Preservation Officer and the interested public in an effort to identify cultural resources that may be affected by oil and gas leasing and development without adequate protective stipulations; and

(6)     Retain jurisdiction of this action to ensure compliance with its decree; and

(7)     Award plaintiffs the costs they have incurred in pursuing this action, including attorneys' fees, as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable provisions; and

(8)     Grant such other and further relief as is proper.

Dated: April 24, 2006

Respectfully submitted,

_____
Stephen Bloch
Southern Utah Wilderness Alliance

Sharon Buccino
Natural Resources Defense Council

Attorneys for Plaintiffs
Southern Utah Wilderness Alliance *et al.*

16

§JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| | |
|---|---|
| **I. (a)   PLAINTIFFS**<br><br>Southern Utah Wilderness Alliance, Natural Resources Defense Council, and The Wilderness Society | **DEFENDANTS**<br><br>The United States Department of the Interior, Bureau of Land Management, Lynn Scarlett, in her official capacity as acting Sec. |
| **(b)**   County of Residence of First Listed Plaintiff   Salt Lake<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)**   Attorney's (Firm Name, Address, and Telephone Number)<br><br>Stephen Bloch, SUWA 425 East 100 South SLC, UT 84111 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☐ 3   Federal Question (U.S. Government Not a Party)

☒ 2   U.S. Government Defendant

☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 892 Economic Stabilization Act<br>☒ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1   Original Proceeding     ☐ 2   Removed from State Court     ☐ 3   Remanded from Appellate Court     ☐ 4   Reinstated or Reopened     ☐ 5   Transferred from another district (specify)     ☐ 6   Multidistrict Litigation     ☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
NEPA, 42 USC 4321; NHPA, 16 USC 470

Brief description of cause:
Challenge to Bureau of Land Management Sept. 2004 oil and gas lease sale

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   0.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE ___   DOCKET NUMBER ___

DATE   04/25/2006

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ___   AMOUNT ___   APPLYING IFP ___

Judge Dale A. Kimball
DECK TYPE: Civil
DATE STAMP: 04/25/2006 @ 08:45:54
CASE NUMBER:  2:06CV00342  DAK